TIOGA R. CO. (BLOSSBURG & C. R. CO. v.). See Case No. 1,563.

TIPPETT (TARLTON v.). See Case No. 13,-754.

TIPTON (MORGAN v.). See Case No. 9,-809.

TIRRELL (GILBERT & B. MANUF'G CO. v.). See Case No. 5,417.

---

## Case No. 14,059.

### TISDALE v. MUTUAL BEN. LIFE INS. CO.

[3 Ins. Law J. 58; [1] 4 Bigelow, Ins. Cas. 58.]

Circuit Court, D. Iowa. 1874.[2]

LIFE INSURANCE — PROOFS OF DEATH — FACT OF DEATH—PRESUMPTIONS—GRANT OF ADMINISTRATION—MISTAKEN IDENTITY.

1. Defendants claimed that the proofs of death of the insured submitted by the plaintiff were not sufficient. *Held*, that if these formal proofs of loss were made by the plaintiff, and no objection was made to them by the defendant, the present objection to their inefficiency is to be considered as waived.

2. This being a civil action, the jury was to decide by a preponderance of evidence.

3. The fact that letters of administration had been granted to a probate court on the effects of the insured constitutes a prima facie evidence of his death, and changes the burden of proof from the plaintiff to the defendant, and in the absence of countervailing evidence the plaintiff is entitled to recover.

4. The proceeding before the probate judge being ex parte, the defendant not being present, it does not require very strong evidence to overcome the prima facie case thus made.

5. The absence of motive to abscond is a material fact to be taken into consideration in a doubtful case.

6. Cases of mistaken identity are so frequent that evidence that the insured was seen subsequent to the appointment of an administrator, if it is inconsistent with other evidence in the case, must be received and considered with scrupulous care.

7. The mere fact of the disappearance of the insured without apparent motive is not a sufficient ground from which his death can be inferred, but the jury must take into consideration all the facts and circumstances attending his disappearance and absence.

[This was an action by Hattie B. Tisdale against the Mutual Benefit Life Insurance Company on a policy of insurance.]

O. P. Shiras and F. Brewer Rood, for plaintiff.

Austin Adams and D. C. Cram, for defendant.

---

[1] [Reprinted by permission.]
[2] [Reversed in 91 U. S. 238.]

LOVE, District Judge (charging jury). This is an action upon a policy of insurance issued by the defendant to the plaintiff. It is admitted that this policy was issued by the defendant, and the policy itself is before the jury in evidence. But the defendant contends that the plaintiff cannot recover, because the proofs of loss were not sufficient. It was necessary by the terms of the policy that the plaintiff, in order to be entitled to the money, should make certain proofs of loss; that is, proofs of the death of the insured. If you find from the evidence that these so-called "formal proofs" were made, and no objection was made to them by the defendant, you will treat as waived the objection as to their insufficiency. In other words, it was the duty of the defendant, if they considered the formal proofs sufficient, to notify the plaintiff of that fact, and require further proof; and, if they put their objections to paying the money upon other grounds, they cannot now take advantage of the insufficiency of the proofs. This is a civil action; it is not a criminal prosecution, and the jury are under the necessity of determining the case by a preponderance of evidence. Conclusive evidence of the facts in this case is not to be expected.

There is a certain conclusive force of evidence necessary in a criminal prosecution, but, this being a civil action for the recovery of money, the rule of law is that the jury must determine it by the preponderance of evidence. The burden was originally upon the plaintiff to make out her case; but the jury will see as I proceed that the burden was in the progress of the trial shifted to the defendant.

The real question in this case is whether the insured, Edgar Tisdale, was dead at the time of the issuing of the letters of administration. That is the real question the jury are called upon to decide. It was incumbent upon the plaintiff to prove that fact. The plaintiff has shown the jury, as evidence of that fact, letters of administration issued by the probate judge to her as administratrix. This the defendant objects to as inadmissible. It is the duty of the court to instruct the jury that the evidence is sufficient to make a prima facie case, and to change the burden from the plaintiff to the defendant. I must explain in as few words as possible the meaning of the terms "prima facie case:" It is a case made by evidence that entitles the plaintiff to recover in the absence of countervailing evidence. If there is no evidence to overcome the case thus made, the plaintiff is entitled to a verdict. A prima facie case may be of greater or less strength. A prima facie case, though not conclusive, is sometimes so strong that it requires evidence of great force to overcome it. The case made by the letters of administration, although sufficient unless overturned, is still not a strong case. The prima facie evidence is but slight, and, of course, it would not re-

quire very conclusive evidence to overcome it. The reason is very obvious. This defendant was not before the probate judge. It was an ex parte proceeding. The letters of administration were issued, perhaps, upon very slight proof. The probate judge, however, did find from the proof before him that the party was dead, in order to issue the letters of administration. These, without any contradictory evidence, give the plaintiff the right to recover; but I must say that it does not require very strong evidence to overcome the prima facie case thus made.

The court is requested to instruct the jury in regard to the absence of motive on the part of Tisdale to abscond. Supposing you should adopt the defendant's theory of the case, looking at it from his standpoint, to wit, that Tisdale was not dead at the time letters of administration were issued, but that he had absconded. In the absence of any motive on his part to abscond, it will not be presumed that he did abscond; but if from the evidence the jury find the fact to be that he did abscond, then the want of motive would have nothing to do with the case. If the jury find that he did abscond, then it would follow that some motive existed. The absence of motive to abscond is a material fact, to be considered in a doubtful case. If the principal fact be proved,—that is, if this party was seen at Baxter Springs some time subsequent to the appointment of an administrator,—and this fact is shown as proof of his having absconded, then the fact of a want of motive to abscond is unimportant, because we cannot always look into the human heart and discover its motives. Crimes are frequently committed of a very grave nature, and yet we can discover no motive. In general, motives must be inferred from facts, rather than facts inferred from motives. If it is established by proof that an act has been done, we know there is some motive for it, though we cannot always see what that motive was. If there is a total absence of motive, that is to be taken into consideration, in a doubtful case, in forming a conclusion as to the fact itself. For instance, if it were proved that one man had killed another, and it appeared as if he had no motive to kill; that the party killed was his friend, at least not his enemy; that he stood in kindly relations towards the deceased,—though the fact of the want of motive would have weight in a doubtful case, yet in the case thus supposed it would avail nothing.

I am also requested to instruct the jury as to the question of identification,—whether the jury can rely upon the identification of a party by others. This matter scarcely admits of legal definition. The truth is that we do ordinarily rely upon our recollection of other men. If a man should say to you that he saw an individual of your acquaintance at a distant place, you would believe

him in the absence of proof to the contrary. If at any time you have met a man of your acquaintance, and subsequently a controversy arises which calls into question this fact, you at once recall the circumstance of your meeting him, and you put confidence in your recollection of his person. Nevertheless, experience shows that we often make mistakes in this way, and so many cases of mistaken identity occur that it is our duty to receive such evidence to show· error. Then the jury must receive and consider evidence of personal identity which is inconsistent with other evidence in the case with scrupulous care and caution. This is all, gentlemen, that the court can say upon this question of identity. It does not admit of anything like a precise legal definition, in my opinion.

I am requested by the defendant to give to the jury some instructions in writing, which I will do. They are as follows:

(1) The plaintiff must prove affirmatively the death of Tisdale, whether the defendants objected to the sufficiency of the preliminary proofs of loss or not.

(2) If the jury are not otherwise satisfied from the evidence in the cause of the death of Tisdale. they cannot infer his death from the fact that he disappeared, and that no motive for his voluntary absence has been proved.

The above is given by the court with this explanation: that from the mere fact of the disappearance of Tisdale without apparent motive it would not be safe to infer his death, and, if this is all that the jury find to be proved in this case, their verdict ought to be for the defendant. But it is the duty of the jury to consider all the circumstances attending the disappearance and absence of Tisdale. Not only the mere fact of his disappearance, but the length of time during which he has been absent and not heard from; all the circumstances attending his disappearance; the efforts, if the jury believe any to have been honestly made, to find the insured, and to ascertain the place of his abode; the motives or want of motives, as shown by the proofs, to abandon his wife. family, and home;. the state of his mind and affections with respect to his family and business,—in a word, the jury must not fix their attention upon any one or more isolated facts or circumstances disclosed by the evidence, and thus form their judgment of the probability of Tisdale's death.

Evidence has been given to the jury to show his relation to his family, the situation of his business. and the state of his mind, what he said in Chicago about his intention to return home, and what he said about his family. We know by experience that men gravitate strongly towards the home of their affections. It is their nature to do so, unless they are unhappy in their domestic relations. Of course, in determining this question, the jury must take into consideration not the fact of his absence, but the length of time of his absence. If it were seven years, that would raise a presumption by law of his death, but, if not absent seven years, the presumption does not arise, although there is an absence of six and one-half years. In this case it is necessary that the absence be corroborated, because there is no legal presumption of his death from mere lapse of time.

Your verdict will be, gentlemen: "We, the jury, find for the defendant;" or "We, the jury, find for the plaintiff in the sum of —— dollars, with —— per cent. interest, from the —— day of ——, 1873." If you find for the plaintiff, she will be entitled to recover the amount of the policy, with interest running from ninety days from the time of the proof of loss.

I would say, in conclusion, that it is of the very greatest importance that you should find a verdict in this case. You will see yourselves that this is a ruinous litigation. The amount is not large, but the expenses are very heavy; therefore you must make an earnest effort in finding a verdict.

Verdict for plaintiff for full amount of policy.

[The case was removed by writ of error to the supreme court, where the judgment above was reversed. 91 U. S. 238.]